IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF GEORGIA

MACON DIVISION

| | | |
|---|---|---|
| THOMAS A. BRIGHTMAN, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. |
| | : | |
| v. | : | _____ |
| | : | |
| CITY OF WARNER ROBINS, | : | |
| CHARLES BEAUCHEA, | | |
| and | : | |
| MARIANNE GOLMITZ | : | **JURY TRIAL DEMANDED** |
| | : | |
| Defendants. | : | |

**Complaint for Damages and Injunctive Relief**

COMES NOW, Plaintiff, Thomas A. Brightman ("Plaintiff") and files this Complaint for Damages and Injunctive Relief. In support of said complaint, Plaintiff shows as follows:

**I. INTRODUCTION**

1.

The Plaintiff is the principal officer and owner of several companies, including Peach Blossom Development Co., Inc, and TAB Enterprises, Inc. which are businesses located in Warner Robins, Georgia, and are solely owned by Brightman. Through Peach Blossom and TAB, Plaintiff engaged in commercial and residential real estate development, construction and sales.

2.

One of Plaintiff's projects was the "Peach Blossom Subdivision," a residential development project in Houston County that featured a body of water that abutted lots in the subdivision. The "Peach Blossom Pond" ("Pond") was designed in accordance with local laws, regulations, and ordinances, to be an aesthetically pleasing feature for property owners in the

subdivision. Brightman, and his companies, built the Pond in accordance with the same. The Pond was designed to be a permanent, year-round feature, which does not discharge any water, unless the additional stormwater capacity is exceeded—to date the Pond has never discharged water. The Pond uses a siphon system instead of a standing drain pipe to ensure that the Pond maintains safe water levels during regular rain events. The City approved the pooling elevation of the Pond and the well, which was recorded in the development plan and covenants.

3.

At the time the pond was built, Donald Walker was Mayor of the City of Warner Robins. Mayor Walker was a powerful political entity in his own right. According to City Employees, Mayor Walker kept "lists." One list was the Mayor's "good" list and the other was his "bad" list. The exact manner in which Mayor Walker populated those lists is unknown to the Plaintiff. Individuals on the "bad" list were subjected to harsh treatment by Mayor Walker, and by extension the City and City employees.

4.

For reasons unknown to the Plaintiff, Plaintiff and his companies were on Mayor Walker's "bad" list. Plaintiff was unaware of such until Defendant Beauchea made comments referencing such in an unrelated deposition. Prior to those statements, Plaintiff only suspected that he and his companies were on Mayor Walker's "bad" list. Upon information and belief, the Plaintiff believes Mayor Walker placed him on the "bad list" because the mayor was experiencing highly publicized political problems. Mayor Walker's "lists" became newsworthy when they were shredded after his death.

5.

Plaintiff's suspicions were based in fact. From communicating with other business people, Plaintiff knew that his businesses were being treated differently than those of other business people. Specifically, while developing the Peach Blossom Subdivision, the City began harassing Plaintiff and frustrating the development process. This harassment came in the form of accusations and allegations that Plaintiff violated ordinances and laws, and forced Plaintiff to

halt progress on the project. These allegations and accusations were not based in fact and were levied against Plaintiff simply because Mayor Walker and City Employees wanted to harm Plaintiff. Additionally, after Plaintiff constructed the Pond and the Pond was functioning properly, the City forced the electricity to the Pond to be shut off, rendering the siphon system inoperable. Moreover, the City made more accusations and allegations that the Pond was in violation of laws and regulations, going so far as to call for the Georgia Environmental Protection Department ("EPD") to investigate the Pond. But the EPD indicated the Pond was within regulation and functioned as it should. To this date, the City has not allowed the Pond to be refilled.

6.

The City has continued to mistreat and abuse Plaintiff by subjecting him to unreasonable demands, unreasonable delays, and treating him differently than the City and City employees treat other business people.

## II. PARTIES

7.

Thomas A Brightman is a resident of Warner Robins, Georgia. Both Peach Blossom Development Co., Inc. ("Peach Blossom") and TAB Enterprises, Inc. ("TAB") are corporations formed under the laws of the State of Georgia and authorized to do business within the State of Georgia. TAB and Peach Blossom's principal places of business are in Warner Robins, GA.

8.

Defendant the City of Warner Robins (the "City") is a municipal corporation subject to suit and may be served through its duly elected mayor, Charles "Chuck" K. Shaheen, III, at 700 Watson Boulevard, Warner Robins, Georgia 31093. Actions relevant to this case were also taken by former Mayor, Donald Walker.

9.

Defendant Charles Beauchea ("Beauchea") is an employee of the City and serves as a city plan reviewer. Defendant Marianne Golmitz ("Golmitz") is also an employee of the City and is currently the City's Utilities Engineer.

### III. JURISDICTION AND VENUE

10.

Subject matter jurisdiction is properly based upon Article 1, § 1, Paragraph 1 and 2 of the Georgia Constitution (Due Process) and pursuant to 42 U. S. C. § 1983 for violations of rights secured by the Fourteenth Amendment to the U S. Constitution, which rights are continuing in nature and continue to be infringed upon by the Defendants.

11.

All of the above-named Defendants are present or reside in Houston County, Georgia, and this Court has personal jurisdiction over them.

12.

Venue is proper in this judicial district as the Defendants committed acts shown herein in Houston County, Georgia.

### IV. GENERAL ALLEGATIONS

13.

Peach Blossom and TAB, through its founder, Plaintiff, developed, built, and sold numerous successful projects and developments in the Middle Georgia area including, but not limited to, Peach Blossom Subdivision, the subdivision at issue in the above styled case.

14.

Peach Blossom has a property interest in the "Pond"—a body of water located in the aforementioned Peach Blossom Subdivision—and complied with all code requirements for such bodies of water.

15.

Peach Blossom sold lots to both individuals and companies abutting the "Pond;" each of those lot owners have a property interest in the "Pond;" the City has no interest in said "Pond."

16.

At the direction of Mayor Walker, City Employees, including those named herein, began harassing Plaintiff and his companies using powers granted to them by the City.

17.

The City implemented a practice and policy of harassing Plaintiff by discriminatorily applying and misapplying City ordinances and building code provisions against Plaintiff, including, but not limited to:

   a. Ordering Plaintiff to stop working on a pond after Plaintiff had obtained the Environmental Health permit allowing the operation of the well and which the City had verified that the well met all distance requirements;
   b. Ordering the power disconnected to the well that fed Peach Blossom Pond;
   c. Ordering Plaintiff to repair drainage work that was the City's responsibility and simultaneously putting a stop work order in and ordering the owner's arrest if repairs were made;
   d. Ordering Plaintiff to comply with State EPD requirements that were not required and threatening the owner with fines of $2,500 per day;
   e. Reporting Plaintiff to the State EPD for violations of water runoff ordinances when Peach Blossom Pond has no discharge, which was known to the City;
   f. Ordering Plaintiff to pay for repairs to Peach Blossom Pond that were not needed (Order dated March 6, 2009);
   g. Fabricating a fictitious list of repairs that exceeded $140,000 for Peach Blossom Pond and threatened the Plaintiff with having to pay that amount to the City to make bogus repairs to the property.

18.

Defendants Beauchea and Golmitz were the principal enforcers of the City's arbitrary and capricious enforcement of ordinances and requirements, at the direction of then Mayor Walker.

19.

The City's harassment of Plaintiff has continued, subjecting Plaintiff to undue delay in obtaining permits and plats. The City's actions have caused Plaintiff to suffer significant harm in the operation of his business. The City's discriminatory application of ordinances and laws included, without limitation, to:

    a. Held numerous public and private meetings to discuss issues surrounding Plaintiff, however Plaintiff was never invited to any meeting or allowed Plaintiff to respond to the scurrilous and barratrous charges levied by the City;

    b. Plaintiff was denied interior completion permits and building permits at sites owned by the Plaintiff throughout the City, including Smithville Church Road, Highway 41 North Plaza, Moody Road, Beau Claire subdivision, and Borders Way. The denial of these permits was unrelated to any legitimate issue or cause of denial and were intended to harass, delay, and economically harm Plaintiff;

    c. The City subjected the Plaintiff to hard inspections—inspections designed to purposely find violations in a protracted manner—at the various work sites. Additionally, the City would find one issue at a site but not leave any "inspection deficiency reports," and then return to find more issues with the site at a later date. By not leaving said reports, Plaintiff was unable to fix any issues or take any corrective action.;

    d. The City required Plaintiff to supply, and bear the costs of supplying, sewer infrastructure to The Bread Store and Dollar Store, located on Highway 41, before approving the plat for Beau Claire subdivision; thereby inhibiting the Plaintiff from selling any property therein. Additionally, the City required Plaintiff to place electrical-usage meters on the front of homes located in Beau Claire, despite the utility company approving their placement on the rear of the buildings. There is

no code for placement of meters. Further, the City has prevented the electrical system to be installed in Beau Claire. The City preferred to encumber the Plaintiff with a more expensive, less practical, and less visually appeasing unit.

e. At Moody Square, the City required the Plaintiff to dig up a functioning sewer system that was ten-foot underneath the ground. The system had functioned for over eighteen months; but the City demanded the Plaintiff dig up the sewer and cover the pipes with three-feet of fill because compaction test had not been performed. But it was the City's responsibility to order such a test, as Plaintiff were only responsible for the labor to install the sewer pipes, and City maintained ownership of the sewer pipes. The actual work was completed within three days; but the City took three months to approve the site for occupancy. The City also required the creation of a "go-around lane" at the second entrance on Moody Road. The City also attempted to create issues regarding Georgia Department of Transportation deceleration lane off of Highway 96, which was not under the City's jurisdiction, but caused problems for the Plaintiff nonetheless. Moreover, this property was delayed for over three months because of the City's arbitrary refusal to issue permits and the City's continued tactic of protracting the inspection process. The City's fire chief required the Plaintiff to install a fire suppression system in one of the units despite being told by the State Fire Marshall saying that no fire suppression was necessary.

f. At Smithville Church Road, the Plaintiff were ordered to install "Stop" signs, "stop bars," requiring an additional stormwater management pond, requiring clean-out collars, altering the elevation of fire hydrants, and requiring additional parking. Further, the City caused work stoppages and denied permits without just cause. Adjacent facilities, owned by different business people, were not subject to the same treatment and requirements.

g. 1131 Houston Lake Road and the Highway 41 North Plaza were commercial developments that suffered from similar harassment and unjust treatment by the City to the detriment of the sites. Both developments were repeatedly held up for City requirements that were discriminatory in nature.

h. In August of 2011, the City refused to allow a building inspection of 115 Veranduh Court, Bonaire (actually in the City of Warner Robins) by the building department, because the engineering department indicated that a fence was unlawfully constructed in a drain easement. This required the Plaintiff to hire legal counsel and the Plaintiff incurred costs and delay to resolve a non-issue.

i. In August of 2011, the City was notified that the Plaintiff's fence at 115 Veranduh Court, Bonaire, was falling into what is coined the "Grand Canyon", a detention pond, that adjoins Plaintiff's lot at 115 Veranduh Court. The detention pond was built by Happell Construction and does not meet construction specifications, was not maintained properly and is not EPD compliant for discharges.

j. In the summer of 2012, the City caused undue delay in the approving of the plat for Rose Hill Subdivision Phase V, solely because the Defendants believed Brightman was involved.

k. In the summer of 2013, the City caused the Plaintiff unnecessary expense and delay by requiring a water management plan on land being developed by the Plaintiff on Nandina Court, Warner Robins. The property abutted a water conveyance easement ("ditch") that emptied into a regional retention pond. The ditch was undersized, according to the City, and Plaintiff was required to pay $20,000 to improve the ditch in order to get completion of his development approved. The City purports to claim that the money will be used to improve the ditch and/or retention pond, but to date no such repairs have occurred. No other property owners along said ditch have been required to pay any monies to the City for improvement of the ditch.

20.

Upon information and belief, the City and other Defendants have not subjected any other similarly situated developer to the wrongful treatment identified herein. While the Plaintiff does not fully know the exact circumstances motivating the City's discriminatory acts and harassment, Plaintiff does have information indicating that several City employees dislike Plaintiff and are actively seeking to frustrate and harass the Plaintiff.

21.

The City has a legal duty to act upon the permits submitted by Plaintiff and to grant Plaintiff the peaceful enjoyment of their property. Defendants' failure to do so constitutes a gross abuse of discretion.

22.

Plaintiffs, pursuant to Georgia law, timely notified the City of the claims being brought and the City refused to settle said claims. As such, Georgia's Ante Litem statute, O.C.G.A. § 36-33-5, has been complied with. See Plaintiff's Exhibit "A."

## V. SPECIFIC ALLEGATIONS

### Count I - 42 U S C. § 1983

23.

The actions of the City described above were not within the scope of their discretionary authority; specifically, the City at the direction of Mayor Walker and by the actions of City employees treated similarly situated businesses differently from Plaintiff.

24.

The City singled out Plaintiff for arbitrary and discriminatory application and misapplication of City ordinances to discourage Plaintiff from building in the City. As such the above-named Defendants violated the Plaintiffs' rights under 42 U S C. § 1983.

25.

Aforesaid illegal and ultra vires acts were committed by individuals working for the City, at the direction of the City or Mayor Walker, and under the guise of enforcing local ordinances, regulations, rules, and laws.

26.

Aforesaid illegal and ultra vires acts interfered with Plaintiff's construction operations and business relations. Further, the arbitrary and capricious "stop work orders" and denial of permits caused Plaintiff to incur *substantial* actual and compensatory damages including, without limitation, lost profits and goodwill, increased labor, overhead costs, professional fees, and finance charges in amounts to be established at trial.

27.

Pursuant to Wideman v. Shallowford Community Hosp., Inc., 826 F.2d 1030, 1032 (11th Cir. 1987), Plaintiffs are entitled to recover damages in amount to be determined at trial.

### Count II – Art. I, § I, Para. I of the Ga. Const. of 1983

28.

Plaintiffs incorporate the above made allegations and incorporate herein by reference the same.

29.

By shutting down the aforementioned projects and properties and by falsely citing Plaintiff for violations, the City deprived Plaintiff of its property without due process of law, in violation of Art. I, § I, Para. I of the Ga. Const. of 1983.

### VI. REQUEST FOR AN INJUNCTION

30.

Plaintiffs incorporate the above made allegations and incorporate herein by reference the same.

31.

The City, through the acts of the above-named Defendants and other employees, agents, and assigns, have continued to wage a campaign against the Plaintiff herein, causing the Plaintiff to suffer financial harm.

32.

Unless enjoined, the City will continue to harass the Plaintiff and deny him a fundamental right to due process under the laws of this State and the United States Constitution.

**WHEREFORE,** Plaintiff prays for the following relief:

(a) That this Court enter a prohibitory injunction:

(1) barring the City and their employees, agents, successors and assigns from applying the City of Warner Robins ordinances in an arbitrary and discriminatory manner against Plaintiff;

(2) dissolving any illegal work cessation orders currently in place, whether in writing or by implication;

(b) That this Court enter a permanent injunction compelling the City to discharge its public duty to act upon the Plaintiff's permits submitted to them and to permit the supplying of electricity to the well at Peach Blossom Pond;

(c) That Plaintiff be awarded actual and compensatory damages plus pre-judgment interest in amounts to be determined at trial against the Defendants;

(d) That Plaintiff be awarded punitive damages in amounts to be determined at trial against the Defendants;

(e) That Plaintiffs be awarded reasonable attorneys' fees and expenses incurred in this action as authorized by 42 U S.C. § 1988*;*

(f) That this Court order a trial by jury to determine all issues relevant in this case; and,

(g) That this Court award Plaintiff such other and further relief as this Court deems just and proper.

- 12 -

This 31st day of December, 2013.

                                       s/ Kelly R. Burke
                                       GBN 095613
                                       Burke Lasseter LLC
                                       2006 Karl Drive, Suite 100
                                       Warner Robins, GA 31088
                                       Ofc. 478-287-6969
                                       Fax 888-933-9336
                                       kelly@burkelasseterllc.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | | |
|---|---|---|
| THOMAS A. BRIGHTMAN, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. |
| | : | |
| v. | : | _____ |
| | : | |
| CITY OF WARNER ROBINS, CHARLES BEAUCHEA, and | : | |
| MARIANNE GOLMITZ | : | **JURY TRIAL DEMANDED** |
| | : | |
| Defendants. | : | |

## **VERIFICATION**

Comes now THOMAS A. BRIGHTMAN, who personally appeared before me this day, and swore and affirmed that the allegations made in the above and forgoing are true and correct to the best of his knowledge and belief.

                  s/ Thomas A. Brightman

Subscribed and sworn before me

this 31st day of December, 2013.

s/ Ketan Patel, Notary Public