IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| THOMAS A. BRIGHTMAN, | : |
| Plaintiff, | : |
| v. | : CASE NO.: 5:13-cv-00468 (LJA) |
| WARNER ROBINS, GEORGIA; CHARLES BEAUCHEA; and MARIANNE GOLMITZ, | : |
| Defendants. | : |

### ORDER

Before the Court is Defendants' Motion for Summary Judgment (Doc. 16). For the following reasons, Plaintiff's claims are **DISMISSED** and, in the alternative, Defendants' Motion is **GRANTED**.

### FACTUAL BACKGROUND[1]

Plaintiff, Thomas A. Brightman, started Peach Blossom Development Company (PBDC) in 2001 and is the sole owner and shareholder of the company. (Doc. 25-1, ¶¶ 3-4). Plaintiff is also the sole owner of TAB Enterprises, Inc. (TAB), a company that specializes in construction. *Id.* at ¶ 5. Additionally, Plaintiff founded a company called TARP. *Id.* at ¶ 214. PBDC either currently owns or formerly owned Peach Blossom Terrace, Smithville Center, Highway 41 North Plaza, Moody Square, and Beau Claire (Doc. 25-1, ¶¶ 37, 110, 132, 142, 158.) TARP owns an unnamed site ("the 17-acre site"). *Id.* at ¶ 213. Plaintiff claims that Defendants- the City of Warner Robins ("the City"); Marianne Golmitz, the City's Utilities Engineer; and Charles Beauchea, an Assistant City Engineer- singled out properties owned

---

[1] The relevant facts are derived from the Complaint (Doc. 1), Answer (Doc. 5), Defendants' Statement of Material Facts (Doc. 16-1), Plaintiff's Response to Defendants' Statement of Material Facts (Doc. 25-1), and the record in this case. Where relevant, the factual summary also contains undisputed and disputed facts derived from the pleadings, the discovery and disclosure materials on file, and any affidavits, all of which are construed in the light most favorable to Plaintiff as the nonmoving party. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

1

by Plaintiff's companies for discriminatory treatment. Plaintiff testified that he does not own any property that is the subject matter of this case. (Doc. 18-1 at 13:7-8).

I. **Peach Blossom Terrace**

Peach Blossom Terrace is a residential development with a pond *Id.* at ¶¶ 36, 38. When the plat for Peach Blossom was approved in early 2006, it did not show a well being used to maintain the elevation of the pond. *Id.* at ¶ 40. On September 14, 2006, the City issued a letter in connection with Plaintiff's application for a well permit, certifying that the proposed well in Peach Blossom was not within one half mile of a City well. *Id.* at ¶ 41. Despite not having approval from the City, the well at Peach Blossom was put into operation. *Id.* at ¶ 43. In 2007, the City received complaints from homeowners about mosquitos at the Pond and about a disturbance caused by excavation around the pond. *Id.* at ¶ 46-47. The equipment for the excavation bore the name of Plaintiff's company. *Id.* at ¶ 48. The parties agree that there was confusion about whether Plaintiff had the proper permitting to excavate from the Georgia Environmental Protection Division. *Id.* at ¶ 52. On September 17, 2008, Beauchea issued a letter to Plaintiff stating that there was a problem with excavation and that the well was not being used in accordance with City ordinances. *Id.* at ¶ 59.

In October, 2008, Ken Thompson, an electrical inspector for the City, drove by Peach Blossom and saw what appeared to be a temporary power pole sitting next to the road. *Id.* at ¶ 72. William Mulkey, the City's building official, believed that the pole posed an immediate danger to the public, and had the electricity turned off. (Doc. 23-2 at 15-16). Without electricity, the well stopped functioning and the water elevation in the pond dropped. (Doc. 25-1, ¶ 80). The City hired an engineering firm to determine how much dirt had been removed from the pond, and the firm identified problems with the existing drainage plan. *Id.* at ¶ 85. Plaintiff believed that he and his attorney reached an agreement with the City Attorney about how Plaintiff would correct the erosion problem. *Id.* at ¶ 93. After Plaintiff's crew began work, Beauchea stopped the work because it was not being performed according to the approved plans. *Id.* at ¶ 94. The Georgia Environmental

2

Protection Division became involved in monitoring Plaintiff's work to repair the pond. *Id.* at ¶ 97. As of the filing of Plaintiff's Complaint (Doc.1) on December, 31, 2013, the pond was still not pooling at its approved elevation and is often empty. *Id.* at ¶ 99.

Plaintiff identifies two comparators to Peach Blossom Terrace, Harrison Pointe and Cobblestone. Plaintiff believes that these two subdivisions used wells for both irrigation and pond maintenance, but do not have problems with the City. (Docs. 25-1, ¶¶ 78-79; 18-5, Ex. 9).

## II. Smithville Center

Smithville Center is a strip mall. *Id.* at ¶ 110. The plans for Smithville Center were initially submitted in August, 2005. *Id.* at ¶ 111. Plaintiff contends that Defendants slowed down the completion of the project and required him to spend unnecessary money by requiring him to add parking spaces, raise the level of fire hydrants, add a deceleration lane, install a stop bar and stop sign, add a site for additional parking, and install, then remove, a garbage dumpster. *Id.* at ¶ 112. Plaintiff also claims that the City refused to issue interior completion permits because of "small" site issues that were not being enforced against other developers. *Id.* at ¶ 113. Mr. Gray, a City Engineer, testified that parking requirements are determined based on the type and use of the development. (Doc. 18-8, at 4:19-5:2)

Plaintiff identifies Oasis Plaza, Mellow Mushroom, Tibidabo Spa, and Lowe Toyota as comparators for Smithville Center. Plaintiff believes that Oasis Plaza is a "real similar looking facility" about a half-mile away from Smithville Center that was not required to have additional parking, although Plaintiff never spoke with anyone at Oasis Plaza about their construction. (Doc. 25-1, ¶¶ 115-116). Plaintiff also stated that Mellow Mushroom was allowed to operate for six months before raising the fire hydrant in front of their business, but acknowledges that Mellow Mushroom did eventually raise the level of the hydrant. *Id.* at ¶¶ 120-121. Plaintiff claims that Tibidabo Spa was allowed to add an entrance on the road without creating a deceleration lane or installing a stop bar or stop sign and that Lowe Toyota did not have stop signs or stop bars. *Id.* at ¶¶ 124-125. Lowe Toyota is not in the same industrial district as Smithville Center. *Id.* at ¶ 127.

3

**III.     Beau Claire**

Beau Claire was a 33-acre site owned by PBDC and designed to be a townhouse, and apartment development. *Id.* at ¶ 158. Plaintiff intended to have 94 townhouses on 14 acres and 312 apartments on the remaining 19 acres. *Id.* at ¶ 159. The ultimate development included 94 townhouse sites and an apartment site. *Id.* at ¶ 160. Plaintiff had difficulty obtaining approval for the initial plans. *Id.* at ¶ 163. PBDC had paid for the expedited review process, but, after several months of waiting, the contractor began clearing the site. *Id.* at ¶ 164. PBDC requested that Flint Electric install "4-pack" electrical meters on the side of each 4-plex unit. *Id.* at ¶ 172. Someone from the city insisted that a separate meter was installed on the front of each unit. *Id.* at ¶ 173. Only the eight units that were built actually have power but the lots that were sold are without power. *Id.* at ¶ 175. Plaintiff decided to change the sewer and water lines during construction. *Id.* at ¶ 169. The City claims to have been unaware of these revisions, which caused the City confusion over who would be responsible for the maintenance and repair of the lines as well as whether Plaintiff intended to sell the lots individually. *Id.* at ¶¶ 170-171. After the project was inspected in March 2007, PBDC was sent a letter detailing all the deficiencies the inspector thought needed to be corrected. *Id.* at ¶ 176.

Plaintiff contends that the Cottages at Lakeview was a similar subdivision "developed almost the same way" as Beau Claire and around the same time, but it was allowed to have 4-pack electrical meters and one large water line. *Id.* at ¶ 187.

**IV.     Highway 41 North Plaza, Moody Square, 1131 Houston Lake Road, and the 17-Acre Site**

Work began on Highway 41 North Plaza in 2007, but there were delays based on the approval of deceleration and acceleration lanes. *Id.* at ¶ 133. The City later denied interior completion permits because of a storm drain pipe. *Id.* at ¶ 137. As of June, 2014, the pipe issues were not resolved. *Id.* at ¶ 141. Moody Square was a commercial retail strip that was initially owned by TAB, but then transferred to PBDC. *Id.* at ¶ 142. Plaintiff complains that the City unnecessarily delayed sewer installation, required the addition of a "go around lane,"

4

and required installation of a fire suppression system. *Id.* at ¶¶ 147, 152, 154. Plaintiff also claims that the property at 1131 Houston Lake Road was delayed by the City's failure to properly approve his sewer system. *Id.* at ¶ 189. After the City learned that Plaintiff founded TARP and TARP purchased the 17 acre site, Plaintiff felt that some of the inspections and requirements for the property development grew tougher. *Id.* at ¶ 214. The City wanted Plaintiff to erect a retaining wall, but Plaintiff thought a different party should be responsible for the wall. *Id.* at ¶ 216.

## PROCEDURAL HISTORY

On December 31, 2013, Plaintiff commenced this action against Defendants. (Doc. 1). Defendants filed their answer on April 21, 2014. (Doc. 5). On July 17, 2015, Defendants moved for Summary Judgment. (Doc. 16). Plaintiff responded on August 17, 2015, (Doc. 25) and Defendant timely replied on August 31, 2015 (Doc. 26). As such, Defendants' Motion is now ripe for review. *See* M.D. Ga. L.R. 7.3.1(a).

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 allows a party to move for summary judgment when the party contends no genuine issue of material fact remains and the party is entitled to judgment as a matter of law. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Grimes v. Miami Dade Cnty.*, 552 F. App'x 902, 904 (11th Cir. 2014) (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "It is 'genuine' if the record taken as a whole could lead a

5

rational trier of fact to find for the nonmoving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact. *See Celotex*, 477 U.S. at 323 (1986); *Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672, 673 (11th Cir. 2009). The movant can meet this burden by presenting evidence showing there is no genuine dispute of material fact, or by demonstrating to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322-24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than summarily deny the allegations or show that there is some metaphysical doubt as to the material facts." *Matsuhita*, 475 U.S. at 586 (citations and internal quotations omitted). Instead, the nonmovant must point to evidence in the record that would be admissible at trial. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (quoting *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999)) (noting that hearsay may be considered on a motion for summary judgment only if it "could be reduced to admissible evidence at trial or reduced to admissible form"). Such evidence may include affidavits or declarations that are based on personal knowledge of the affiant or declarant. *See* Fed. R. Civ. P. 56(c)(4).

On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict in its favor. *See Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646. The Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

rational trier of fact to find for the nonmoving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact. *See Celotex*, 477 U.S. at 323 (1986); *Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672, 673 (11th Cir. 2009). The movant can meet this burden by presenting evidence showing there is no genuine dispute of material fact, or by demonstrating to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322-24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than summarily deny the allegations or show that there is some metaphysical doubt as to the material facts." *Matsuhita*, 475 U.S. at 586 (citations and internal quotations omitted). Instead, the nonmovant must point to evidence in the record that would be admissible at trial. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (quoting *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999)) (noting that hearsay may be considered on a motion for summary judgment only if it "could be reduced to admissible evidence at trial or reduced to admissible form"). Such evidence may include affidavits or declarations that are based on personal knowledge of the affiant or declarant. *See* Fed. R. Civ. P. 56(c)(4).

On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict in its favor. *See Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646. The Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

# **DISCUSSION**

## I. Jurisdiction

As a federal court of limited jurisdiction, we "are obligated to inquire into subject-matter jurisdiction sua sponte whenever it may be lacking." *Cadet v. Bulger*, 377 F.3d 1173, 1179 (11th Cir. 2004). "In deciding whether subject matter jurisdiction exists, we may consider the pleadings and matters outside the pleadings, such as testimony and affidavits, in order to satisfy ourselves as to our power to hear the case." *Williams v. U.S.*, 314 Fed. Appx. 253, 256 (11th Cir. 2009) (citing *McMaster v. United States*, 177 F.3d 936, 940 (11th Cir. 1999)).

"It is well established that § 1983 does itself create no substantive rights; it merely provides a remedy for deprivations of federal rights established elsewhere." *Wildeman v. Shallowford Community Hosp., Inc.*, 826 F.2d 1030, 1032 (11th Cir. 1987). "In any § 1983 action, a court must determine 'whether the Plaintiff has been deprived of a right secured by the Constitution and laws of the United States.' " *Glenn v. Brumby*, 663 F.3d 1312, 1315 (11th Cir. 2011) (quoting *Baker v. McCollan*, 443 U.S. 137, 140 (1979)); *see also* 42 U.S.C. § 1983. "Absent the existence of an underlying constitutional right, no § 1983 claim will lie." *Wildeman*, 826 F.2d at 1032.

Plaintiff's complaint alleges that "the City singled out Plaintiff for arbitrary and discriminatory application and misapplication of City ordinances," therefore violating his rights under 42 U.S.C. § 1983. (Doc. 1, ¶ 24). Although it is not obvious from the face of the complaint, subsequent briefing indicates that Plaintiff claims Defendants violated the fourteenth amendment by denying him "equal protection of the laws" and that he is proceeding under a "class of one" theory. *See* U.S. Const., amend. XIV, § 1; *Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1313 (11th Cir. 2006). "Equal protection claims are not limited to individuals discriminated against based on their membership in a vulnerable class." *Campbell*, 434 F.3d at 1313. To prevail on an equal protection claim brought by a "class of one," Plaintiff must show: "(1) that [he] was treated differently from other similarly situated individuals; and (2) that Defendant unequally applied a facially neutral ordinance for the purpose of discriminating against [him]." *Id.* at 1313-14; *see also Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1203 (2007) (citing *Village of Westbrook v. Olech*, 528 U.S. 562, 564 (2000)).

Plaintiff fails to show that he was treated differently from other similarly situated individuals, and thus was denied equal protection by Defendants. "A showing that two projects are similarly situated requires some specificity" and the project "must be prima facie identical in all relevant respects." *Campbell*, 434 F.3d at 1314; *see also Leib v. Hillsborough County Public Transp. Com'n*, 558 F.3d 1301, 1307 (11th Cir. 2009)("We have frequently noted that the 'similarly situated' requirement must be rigorously applied in the context of 'class of one' claims.") "A 'class of one' plaintiff might fail to state a claim by omitting key factual details in alleging that it is 'similarly situated' to another." *Irvin*, 496 F.3d at 1205 (citing *GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1367-68 (11th Cir. 1998)). Plaintiff identified six projects where he claims he was subjected to discriminatory application of city ordinances: Peach Blossom Terrace, Smithville Center, Highway 41 North Plaza, Moody Square, Beau Claire, 1131 Houston Lake Road, and the 17-acre site. (Doc. 1, ¶¶ 17, 19). He offers seven comparators: Cobblestone, Harrison Pointe, Oasis Plaza, the Cottages at Lakeview, Mellow Mushroom, Tibidabo Spa, and Lowe Toyota. (Docs. 25 at 9; 25-1, ¶¶ 78, 79, 125). None of these projects are identical to any of Plaintiff's projects.

With regard to Peach Blossom Terrace, Plaintiff identified two comparators, Harrison Pointe and Cobblestone. Plaintiff fails to submit any evidence showing that these projects are prima facie identical to Peach Blossom Terrace. (Doc. 18-5, Ex. 9). Plaintiff merely notes that these projects also have a well and water feature, and that he believes that the projects did not have problems with the City, despite the ordinance requiring wells to be used for irrigation purposes. (Doc. 25-1, ¶¶ 78-79). Plaintiff acknowledges that wells may appear to be for aesthetic purposes while actually being used for irrigation. *Id.* Plaintiff also has not identified any similarities in the permits or permitting process for Harrison Pointe and Cobblestone that would allow a conclusion that Peace Blossom Terrace was similarly situated.

With regard to Smithville Center, Plaintiff alleges that Oasis Plaza, Mellow Mushroom, Tibidabo Spa, and Lowe Toyota are comparators. Plaintiff bases his comparison to Oasis Plaza on it being a "real similar looking facility," and does not provide any more detail for Mellow Mushroom or Tibidabo Spa. *Id.* at ¶ 115. Lowe Toyota is not similarly

situated based on Plaintiff's own admission that it is not in the same industrial district. *Id.* at ¶ 119; *Irvin*, 496 F.3d at 1204.

With regard to Beau Claire, Plaintiff identifies the Cottages at Lakeview, but provides no evidence to establish that the two developments are prima facie identical. Nor does Plaintiff identify any developments as being similarly situated to Highway 41North Plaza, Moody Square, 1131 Houston Lake Road, or the 17-acre site. "Bare allegations that other applicants…were treated differently do[es] not state an equal protection claim. *Manseau v. City of Miramar*, 395 Fed. Appx. 642, 645 (11th Cir. 2010). As such, Plaintiff has failed to meet its burden of showing that similarly situated projects were treated differently than any of the projects owned by his companies.

As Plaintiff has failed to identify any similarly situated individuals, he cannot maintain that his fourteenth amendment rights were violated. Stating no other constitutional violation, Plaintiff fails meet the burden of establishing a claim under 42 U.S.C. § 1983 and the Court has no jurisdiction over Plaintiff's claim. When a court finds that it lacks subject matter jurisdiction at the summary judgment stage, the proper procedure is to dismiss the claim pursuant to Fed. R. Civ. P. 12(h)(3), rather than granting the motion for summary judgment. *See Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1240 (11th Cir. 2003). Accordingly, Plaintiff's claim is **DISMISSED** for lack of subject matter jurisdiction.

II. Standing

Even if the Court did have jurisdiction over Plaintiff's claim, Plaintiff has failed to show that he has standing to bring such claims. Standing "present[s] the threshold jurisdictional question of whether a court may consider the merits of a dispute." *Elend v. Basham*, 471 F.3d 1199, 1204 (11th Cir. 2006). The party invoking federal jurisdiction bears the burden of establishing that he has standing to sue. *American Civil Liberties Union of Florida, Inc. v. Dixie County, Fla.*, 690 F.3d 1244, 1247 (11th Cir. 2012). There are three constitutional requirements for standing, "all of which must be satisfied:" injury, causation, and redressability. *Granite State Outdoor Advertising, Inc. v. City of Clearwater, Fla.*, 351 F.3d 1112, 1116 (11th Cir. 2003). "Because standing is not merely a pleading requirement, 'each

element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof.' " *Dixie County*, 690 F.3d at 1247 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

Generally, shareholders lack standing to maintain an action for violation of 42 U.S.C. § 1983 to redress an injury to the corporation, even though the shareholder suffered financial harm as a result of the injury. *Gregory v. Mitchell*, 634 F.2d 199, 202 (5th Cir. 1981);[2] *see also RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1058 (9th Cir. 2002); *Flynn v. Merrick*, 881 F.2d 446, 450 (7th Cir. 1989); *Diva's Inc. v. City of Bangor*, 411 F.3d 30, 42 (1st Cir. 2005); *Pothoff v. Morin*, 245 F.3d 710, 717-18 (8th Cir. 2001). This is true even where the plaintiff is the sole shareholder or owner of the corporation. *Noell v. White*, 2005 WL 1126560, at *7 (M.D. Fla. May 12, 2005); *Diva's Inc.*, 411 F.3d at 42; *Erlich v. Glasner*, 418 F.2d 226, 229 (9th Cir. 1969). A shareholder does have standing, however, when he suffered an injury independently from the corporation. *Noell*, 2005 WL 1126560, at *7; *RK Ventures,* 307 F.3d at 1058.

Plaintiff has not stated an injury independent of the ones suffered by his corporations. All of the property at issue in this case is owned by one of Plaintiff's corporations or by a third party. (Doc. 24-1, ¶¶ 3-5, 37, 110, 132, 142, 158, 204). In his complaint, Plaintiff states that "the City singled [him] out for arbitrary and discriminatory application and misapplication of City ordinances to discourage [him] from building in the city." (Doc. 1, ¶ 24). He further states that the City "interfered with his construction operations and business relations" and asks for damages including "lost profits and goodwill, increased labor, overhead costs, professional fees, and finance charges." *Id.* at ¶ 26.

These injuries are not separate from those suffered by the development corporations. Courts have found that injuries are separate from those to the corporation when the Plaintiff seeks to recover damages under separate theories of law or damages inapplicable to the corporation. *See, e.g. Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1318-19 (9th Cir. 1989)

---

[2] "Decisions of the United States Court of Appeals for the Fifth Circuit, as the court existed on September 30, 1981, handed down by that court prior to the close of business on that date, [are] binding as precedent in the Eleventh Circuit." *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981). *Gregory* was decided on January 12, 1981, and is thus binding precedent in the Eleventh Circuit. The Eleventh Circuit has not since addressed the issue of shareholder standing to redress injuries to the corporation.

(holding that Plaintiff alleged separate injuries when he argued retaliation for exercising first amendment rights and complained of emotional and mental distress); *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1058 (9th Cir. 2002) (holding that Plaintiff's alleged personal injuries when their complaint sought damages for intentional infliction of emotional distress, defamation, and violations of their first and fourteenth amendment rights as individuals). As Plaintiff has not identified any individual injuries that would justify individual damages, he lacks standing as a matter of law and summary judgment is appropriate.

### III.  Plaintiff's State Law Claim

This Court has dismissed Plaintiff's § 1983 claim on the basis of jurisdiction and standing. Plaintiff also argues that Defendants violated his rights under the Georgia Constitution. Once a plaintiff's federal claims are dismissed, "there remains no independent original federal jurisdiction to support the Court's exercise of supplemental jurisdiction over the state claims against Defendant." *Baggett v. First Nat. Bank of Gainesville*, 117 F.3d 1342, 1352 (11th Cir. 1997). Pursuant to 28 U.S.C. § 1367(c)(3), the Court may decline to exercise supplemental jurisdiction over claims after it has dismissed all claims over which it has original jurisdiction. "The decision to exercise supplemental jurisdiction over pendant state claims rests within the discretion of the district court." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088-89 (11th Cir. 2004). "Where § 1367(c) applies, considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction." *Baggett*, 117 F.3d at 1353 (citing P*almer v. Hosp. Auth. of Randolph Cty.*, 22 F.3d 1559, 1569 (11th Cir.1994). The Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." *Raney*, 70 F.3d at 1089.

The Court finds that the state law claims asserted by Plaintiff should be dismissed in order to allow him to pursue those claims in a more appropriate forum. The state court is best equipped to research and rule on matters of state law, and comity would suggest that it should be allowed to do so. In addition, Section 1367(d) gives "the plaintiff at least 30 days to re-file in state court after a federal court declines to exercise supplemental jurisdiction,"

11

thereby removing "the principal reason for retaining a case in federal court when the federal claim belatedly disappears." *Personalized Media Commc'ns, LLC v. Scientific–Atlantic, Inc.*, 493 F. App'x 78, 82 n.1 (11th Cir. 2012); *see also. See* 28 U.S.C. § 1367(d) (providing that state law claims asserted in federal court along with "related" federal claims "shall be tolled while the claim is pending and for a period of 30 days after it is dismissed"). Although it may be more convenient for Plaintiff to continue litigating his case in this Court, neither judicial economy nor fairness to other litigants support retaining jurisdiction over the state law claims while delaying justice in other cases where the Court retains original jurisdiction. Accordingly, Plaintiff's state law claims are **DISMISSED without prejudice**.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's claims are **DISMISSED** and, in the alternative, Defendants' Motion for Summary Judgment (Doc. 16) is **GRANTED**.

**SO ORDERED**, this  29th  day of    September   , 2016.

   /s/ Leslie J. Abrams   
**LESLIE J. ABRAMS, JUDGE**
**UNITED STATES DISTRICT COURT**